I represent the defendants, Acosta Tractors, Felix Acosta and Alex Ross. May it please the Court, in this case, as the Court knows, a default judgment was entered in federal court after an arbitration was suspended and terminated for nonpayment. We claim . . . One of the things I'm having trouble figuring out is what exactly . . . what the rationale of the district court was. I think we raised two issues, of course, and the main issue is the error in entering a default judgment. I think there's a key misapprehension, and as I looked at it again this morning, I had the same difficulty Your Honor did, but as I looked at it this morning, if you look at the order entering the default, which was docket entry 36 and page 2, there's a paragraph there where the Court discusses its rationale for entering the default judgment. I believe the Court just misapprehended the case law. The Court relied upon two cases. One is the prepaid legal services case versus Cahill, and the other one is Sink v. Aiden. And primarily . . . Tenth Circuit and Ninth Circuit cases. That's right. Correct, Judge. The Tenth Circuit case is the prepaid case from 2015. Our district court read that case for the proposition that the power is reserved to the district court to determine whether there's a default in arbitration, even if the arbitrators don't make that finding. And so the Court said that. And then a little later in the paragraph, the Court, in explaining in a series the three reasons for entering default judgment, it says, and the precedent stating courts retain the right to enter default. So that's a leap that doesn't exist in the law. The Court took a leap of default under Section 3 of the FAA, which I'll talk about in a moment, to equating that somehow to entry of default in the federal court litigation. The district court was entitled, was it not, then, if I understand you, to say that your client was in default in arbitration. That's right. Pursuant to Section 3 of the FAA. And that's . . . The question is what to do about it. That's right, Judge. That's exactly right. And if I understand you, your argument is that he should have lifted the stay, correct? And then gone forward from there. Exactly what happened in the cases he relied upon. Right. Right. So, and I don't want to belabor this, the Court seems to understand the issue, of course, but each of the three cases we cited, and two of which were relied upon by the trial court, discuss only default in proceeding in arbitration in terms of Section 3. And Section 3 is the section of the Arbitration Act that allows the court to enter a stay of the federal court case, the underlying case, so that arbitration can go forward. The only issue about default here is whether a party is allowed to return to arbitration, having already been there and not paid. That was the only issue that should have been discussed in this case, as was discussed in the two cases that the court relied upon. I will briefly address the second issue. This is our alternative argument. In the event that this court were to agree that default judgment was proper, we hope the court doesn't agree with that, but if it does, our alternative error raised with regard to this trial court is determining damages based on an affidavit of the plaintiff and not holding an evidentiary hearing. We cited authorities for that. We don't have to get to that if we find that it was error to enter the default judgment. That's exactly right, Judge. With that, I'll reserve the rest of my time, unless the court has other questions. Okay. Well, this is a good morning. Mr. Zidell. Good morning. May it please the court, Jay Zidell along with Rifka Jaff for the appellees. Just to give the court a background, as the court is probably well aware, employees generally have no idea when they sign arbitration agreements. They do it in order to get a job. If they don't sign it, they don't get a job. When they sue, to their chagrin almost all the time, the employer comes up with an arbitration agreement. Whether they understood it or not, the employees are stuck with it if they sign it. That's exactly what happened in this case along with the four other plaintiffs that got sent to arbitration ever since 2012 with this same defendant. This is a classic case of gaming the arbitration system. Gaming, and I underscore that word because that's exactly what the court . . . Process matters, though. Here's my concern, Mr. Zidell. I totally understand where you're coming from and everything you just said, but it does seem to me that the court would have some sanction authority after making findings of bad faith misconduct or something like that to enter a default judgment, but you'd need to have a process for that. You'd have to have a hearing for it. You'd have to have an opportunity for both sides to be heard. That didn't happen here. Well, Your Honor, in all . . . I mean, our position is a stopple has to apply under certain circumstances. I mean, employers cannot be given free reign to invoke arbitration knowing how much it's going to cost. They had four other cases in the pipeline. They knew how much it was going to cost. They delayed payment asking for the cases to be consolidated by the arbitrator. The arbitrator said no. They moved to disqualify the arbitrator. He said no. After they got a series of unfavorable rulings, they said, you know what? We're not going to pay. So what is the consequence for that? Why aren't the employers in this case stopped from coming back into district court, the same court that they urged to . . . Maybe there's an argument for that, but it doesn't seem to me that we even had an opportunity for that argument to be joined and made in the district court. The district court just thought that the consequence of default in arbitration was necessarily a default judgment in the district court, and that to me doesn't follow. Why would that be an abuse of discretion in a case where it's clear and uncontested that the employer willfully decided not to pay the arbitration fee? We don't have a lot of the arbitration record, so that's one problem. But of course, you understand, I mean, obviously the district court judge was frustrated with what was going on here. I imagine you are too, but in this case, we've got to write a rule that would apply for example to one of these employees that didn't realize they're signing an arbitration agreement. They wind up in arbitration. They're not able to pay, and I'm sure you're sensitive to the idea that we don't want to write a rule that allows a default to be entered against them because they were unable to pay. So whatever rule this case produces needs to have a little play in the joints, in my view. Right, and we would agree that a rule is needed. However, under the specific facts of this case, where it is evident by their briefs, by ours, by Judge Moreno's ruling, the employer willfully failed to pay. They never produced. They asked for extension after extension to pay just in order to get certain rulings or not get certain rulings from the arbitrator. They come back to district court saying, we want to now litigate in district court because we didn't like what was going on in arbitration. Under the particular facts of this case, where an employer requests and demands arbitration over the employee's objection and gets sent to arbitration, and then the employer willfully, and I underscore willfully, refuses to pay because that's . . . We don't have a finding of bad faith here. We just have the district court making the leap, as your adversary put it, the assumption that the default in arbitration necessarily means there should be a default judgment. That goes to the point that Judge Martin raises, if that's going to be the rule, that works both ways, and there are problems with that. Well, there are, and if it works both ways, so be it. I will say this, that in our experience over the last two decades or so, representing thousands of these employees, that we don't know employees that want to invoke these agreements to begin with. Maybe . . . It may well be that you would be entitled to a default judgment. It just seems to me that you've got to have some process beforehand. You've got to move for the default judgment and make your case why you're entitled, and your adversary has to be given an opportunity to be heard about why there shouldn't be a default judgment, none of which occurred here. Well, we did file a motion for default judgment and for sanctions and for a default on liability to be entered. So we filed that. Did we have a hearing? Did we have a finding of bad faith? Did we have anything like that? There wasn't a hearing given, but I think that based on the record before the court, it was uncontested that the employer willfully and intentionally did not pay for the same arbitration that it demanded to go to. What's your strongest . . . I mean, what in the record before us on appeal is your strongest indication that the employer willfully refused to pay the arbitration award? Well, I know in the defendant's appendix, they've attached the arbitrator's finding from the sister case in Garcia that led up to this because . . . and in this one, the arbitrator's finding that it was a nonpayment after she gave them opportunity to cure. I know that Judge Moreno put in his order that's on appeal that the employer willfully or intentionally failed to pay or didn't produce any evidence that they couldn't pay, and that's never been contested. It says the defendant's admission that it refused to pay the cost because they had escalated. Yeah, and that's not enough. Under Musnick or under Greentree, we know that's not enough. They had to come forth, and they were given ample opportunity to do it at least maybe four or five times in arbitration, and again, in response to our default judgment, show the court you can't pay. Put evidence that this circuit requires, that the Supreme Court requires. Just these allegations or the feeling that the costs are heavy, yes, they're heavy, but those same costs are being paid for the plaintiffs to exchange their right to a jury trial in arbitration, so that's a bargain for consideration that goes on in these agreements. Our position is that yes, once the arbitrator in these type of cases makes a finding that there was a willful nonpayment, that the district court has the authority and the discretion to enter a default based on the particular facts of this case. Judge Marino dismissed this case in April, and the order of termination of proceedings wasn't issued until June, right? I'm sorry? Judge Marino entered the default judgment in April of 2017, and the order of termination of proceedings by the arbitrator wasn't until several months later, right? I would need to check that, Your Honor. I think that he required that he had a . . . oh, no, actually there was a finding of nonpayment and termination of the arbitration proceedings before he entered default, and I think that he denied default at the very beginning, saying that there was not an order of finality in arbitration, and then the arbitrator entered that subsequent order, and then he finally entered the default after that. There just has to become a point in time, and that's what I would like to urge the panel, is that there comes a point in time where employers have to be held accountable, where they simply cannot go from forum to forum shopping. They can . . . estoppel should apply under these particular facts of this case, and that it was not an abuse of discretion for Judge Marino to enter a default under these particular facts. That's our position. Is there anything else? You don't accept that sanctions would be the true remedy if you believe that the employer is gaming the system? Well, default is a sanction. Well, I understand, but in the absence of any specific statutory language in Section 3 or in Rule 55, then it's a leap, is it not, for the district judge to decide, well, I'm just going to grant a default judgment, and you say it is a sanction, but it's a sanction after you've made findings of bad faith, and I know Judge Pryor has hit on this before, and none of that is in the record of this. Well, the bad faith, I think, is tantamount to it being undisputed that the employer willfully failed to pay for the same arbitration that it demanded be had to begin with. Yeah, but our case law is pretty clear there needs to be a finding of bad faith. So a finding that a willful nonpayment by that same employer is not tantamount to a finding of bad faith? To have something we can meaningfully review here, where the district court has explained more than what we have here, this is my view, at least. My view is if I just look at what the district court said, the district court appeared to assume that because the party was in default in arbitration that necessarily meant . . . and that the district court had the right to decide that, that necessarily meant then that he could enter a default judgment. That's a leap. There's not a finding of bad faith here. There's not been a notice and opportunity to be heard that the district court was considering a sanction for bad faith conduct. There's been none of that. It may well be you're entitled to that finding, you're entitled to that sanction, and you'll end up in the same place, but it's just not clear to me Judge Moreno has checked the boxes. That may be why you're sitting there and I'm standing here, but I will say that a willful nonpayment, I think in and of itself under these facts, especially when there's evidence that the court considered . . . You don't have a finding of a willful nonpayment. District court could make a finding like that and could make that to support a finding of bad faith conduct. You see my point? I understand what you're saying, but once again, I don't want to just keep repeating the same position that we're going over and over again. I appreciate that, Mr. Seidel, and I'm sympathetic to your client's concern. Thank you. Thank you. Mr. Aiello? Do you have anything else to say? Mr. Aiello, before you start, sorry. Maybe I have the record wrong, but it looks like to me that Judge Moreno entered the default judgment. The court has considered the most important portions of the record and is otherwise fully advised it is a judge that the default final judgment is granted on April of 2017, and I don't see the order of termination of the arbitration proceedings being entered until June. Is that right? It is right. Okay. There was though a suspension order earlier. Oh, I knew that, yeah. In March, but no, the termination happened, I believe, on June 2nd maybe, but I know it's the month of June, so it was a month . . . Twenty-second. Twenty-second. Okay, so a couple of months after the default judgment, which obviously raises some kind of a flag. You choose the color, I guess, but I do want to respond to you, Judge Pryor, about whether they might be entitled to a sanction that could include a default judgment. Surely federal courts have the power to enter such sanctions under various circumstances. The only thing that's alleged here is that the defendants didn't pay . . . It's really just the advance payments in arbitration, and there's no case authority for that being a sanctionable event. To use an overused . . . to borrow from an overused phrase, what happens in arbitration? The federal court can't enter a default arbitration award, for example. It can enter default judgment under Rule 55, where a party fails to plead or defend in the case, and obviously that hasn't even been alleged and couldn't be alleged here. I know you're not here to litigate whether my client was playing the system, but what the record shows is that . . . We're not here to . . . I don't think we're really here to litigate whether there was bad faith misconduct, because there's been no such finding. That's correct. That's correct, Judge. The case law just doesn't authorize what the judge did, nor does it authorize entry of a default judgment for anything to do with payment or non-payment in arbitration. If there are no other questions, I'll cede the rest of my time to the court on this Friday morning. Thank you, Your Honor.